## MEDIATED SETTLEMENT AGREEMENT

This Mediated Settlement Agreement ("Agreement") is made and entered into by and between all of the parties in this action, including Plaintiff Jeffrey Evans ("Evans" or "Named Plaintiff"), and the 63 individuals who filed consents to join this lawsuit ("Opt-In Members") (together, with Named Plaintiff, "Plaintiffs" or the "Settlement Group"), and Defendants Comcast Corporation and Comcast Cable Communications Management, LLC (collectively, "Defendants" or "Comcast"), and all of their respective past, present, or future parents or other affiliated corporations, divisions, subsidiaries, partnerships, partners, officers, directors, shareholders, employees, agents, attorneys, predecessors, successors, benefit plans, and assigns (and the officers, directors, shareholders, employees, agents, attorneys, predecessors, successors, benefit plans, and assigns of all such parent or other affiliated corporations, divisions, partnerships and subsidiaries) (collectively, "Defendants" or the "Released Parties"). Plaintiffs and Defendants are collectively referred to herein as "the Parties." The Parties reached this Agreement in connection with the August 20, 2014 mediation with Hunter Hughes (the "Mediation").

Plaintiffs, represented by the Shavitz Law Group, P.A. and Werman Law Office, P.D. (collectively, "Plaintiffs' Counsel"), and Defendants, represented by Wargo & French LLP ("Defendants' Counsel"), desire to compromise and settle their dispute. Without admission of fault and for the sole purpose of ending this action, the Parties enter into this Agreement as settlement of the claims, including attorneys' fees, and any other element of damage, past, present and future, which were brought, or which could have been brought, in the civil action *Evans v. Comcast Corporation, et al.*, Case No. 9:12-cv-81203-KAM, United States District Court for the Southern District of Florida ("the Litigation"). Subject to the approval of the Court, the Parties agree as follows:

1. **No Admissions.** Defendants deny any violation of the Fair Labor Standards Act ("FLSA") and any other federal, state, or local law or regulation. This Agreement and any subsequent settlement agreement shall not be construed as an admission by any Party of any liability, or any acts of wrongdoing, or the violation of any federal, state or local law, ordinance or regulation, nor shall it be considered as evidence of any such alleged liability, wrongdoing, or violation of any federal, state or local law, ordinance or regulation. The Parties agree that this Agreement shall not be admissible as evidence in any trial, hearing, deposition, or other action before any court or tribunal of any kind, except that it may be used as evidence in a subsequent proceeding to enforce the terms of this Agreement.

2. **Settlement Authority.** Plaintiffs' Counsel warrants and represents to Defendants and the Court that they have actual authority to settle on behalf of all members of the Settlement Group, to sign this Agreement on behalf of all members of the Settlement Group, and to take all other actions necessary to effectuate the agreements set forth in this Agreement.

3. **Financial Terms of Settlement.** In consideration for Plaintiffs' execution of this Agreement (individually or by Plaintiffs' Counsel), dismissal of the Litigation with

prejudice, and a release from all members of the Settlement Group and the other consideration set forth herein, Defendants agree to pay up to ████████ ████████████████████████████████████ (the "Maximum Settlement Amount"), pursuant to the terms and conditions of this Agreement. This Agreement shall be submitted to the Court for approval on or before October 21, 2014. The Maximum Settlement Amount is inclusive of all payments to Named Plaintiff, Opt-In Plaintiffs, the Plaintiffs' Counsel Fees and Costs Payment, and the Service Award Payments.  Except for the payments expressly described in Paragraph 4 below, Defendants shall not be required to pay any amount in excess of the Maximum Settlement Amount.  Payments from the Maximum Settlement Amount shall be allocated as follows:

    a.  A total of ████████ ███████ ███████████ shall be paid from the Maximum Settlement Amount as the "Plaintiffs' Counsel Fees and Costs Payment." Plaintiffs' counsel affirms and agrees that the entire Plaintiffs' Counsel Fees and Costs Payment shall be paid to the Shavitz Law Group, P.A.  The Plaintiffs' Counsel Fees and Costs Payment is the total amount of attorneys' fees, litigation costs, and expenses Plaintiffs' Counsel shall receive to compensate them for their representation of Plaintiffs in the Litigation, including their filing of the Litigation, Litigation expenses, this Settlement, and post-settlement activities and compliance procedures.  The Plaintiffs' Counsel Fees and Costs Payment was separately negotiated and was agreed upon after determining the settlement sums for Plaintiffs, and Defendants agree not to oppose same.  Defendants shall issue an IRS Form 1099 to the Shavitz Law Group, P.A. for the Plaintiffs' Counsel Fees and Costs Payment within the time provided below following receipt of the Shavitz Law Group, P.A.'s W-9.

    b.  The Named Plaintiff Jeffrey Evans, and Jamie Grimes, Cashondra Chandler, Cherrelle Bowen and Rolando Rodriguez (collectively "Service Award Recipients"), shall receive "Service Award Payments" in the amounts of: █████████████████ ████████ each to Jeffrey Evans and Jamie Grimes; and ███████ ████████ each to Cashondra Chandler, Cherrelle Bowen, and Rolando Rodriguez, for a total Service Award Payment from the Maximum Settlement Amount of ██████ ████████.  The Service Award Payments are the enhancement awards paid to the Service Award Recipients in their individual capacities for their service in the Litigation and in further consideration of the Service Award Recipients' execution of separate, individual settlement agreements a form acceptable to the Parties wherein they agree, among other commitments, to dismiss and release any their individual claims against Defendants.  Defendants shall issue IRS Form 1099s to each Service Award Recipient for the Service Award Payments within the time provided below following receipt of each Service Award Recipient's W-9.

2

   c. Following the allocation of the amounts described in sections a. and b. of this Paragraph, the remainder of the Maximum Settlement Amount (the "Net Aggregate Settlement Amount") shall be allocated to the individual members of the Settlement Group as set forth below.

      i. The allocation to each individual member of the Settlement Group "Individual Settlement Award" is attached hereto as Exhibit A and was computed by Plaintiffs' counsel based on the relative number of workweeks that each individual member worked as a Customer Account Executive for Defendants in the State of Florida during the limitations period applicable to each individual member.

      ii. Allocations to Plaintiffs from the Net Aggregate Settlement Amount will be attributed as fifty percent wages and fifty percent non-wages. From each such wage allocation, deductions for the Plaintiff's share of mandatory federal, state, and local payroll taxes and withholdings on the wage portion of the allocation will be made. Defendants will issue an IRS W-2 form to each Plaintiff for the wage portion of such payments payable under the Parties' agreement and an IRS 1099 Form for the non-wage portion as may be necessary. Each Plaintiff shall provide an executed IRS Form W-9 as a condition for receipt of the non-wage payment. Plaintiffs' Counsel has notified Defendants of all circumstances that might prevent Plaintiffs' Counsel from obtaining an executed W9 form from each Plaintiff within the time provided by this Agreement.

   d. Plaintiffs' Counsel shall be responsible for obtaining and providing Defendants with executed W9 forms from all members of the Settlement Group. Should an executed W9 form for any member of the Settlement Group not be provided to Defendants within 90 days of Court approval, that Plaintiff's Service Award Payment and/or Individual Settlement Award will not be issued, and will instead be retained by Defendants. It is understood and agreed that, although they will not receive payment, any such Plaintiffs will still be bound by the terms of the settlement.

   e. If settlement payments issued to any Plaintiffs are not cashed or deposited within ninety (90) calendar days of the date the check is mailed by Defendants, the checks will be null and void. All such uncashed/ undeposited settlement payments shall be retained by Defendants. It is expressly agreed that to the extent fewer than all Plaintiffs cash or deposit their checks, the total amount paid by Defendants will be less than the Maximum Settlement Amount. Plaintiffs who fail to cash or deposit their checks within ninety (90) calendar days of the date the check is mailed by Defendants will still be bound by the terms of the settlement.

4. **Defendants' Portion of Payroll Taxes.** Defendants will be responsible for their portion of all applicable payroll taxes with regard to the wages payments (Form

W-2 payments) described in Paragraph 3.c.ii., above, over and above the Maximum Settlement Amount.

5. **No Additional Fees or Costs.**  The Parties agree that the Maximum Settlement Amount is in settlement for, among other items, any and all alleged claims for attorneys' fees, costs, and expenses by the members of the Settlement Group incurred in connection with the Litigation.  Except as set forth in Paragraphs 3 and 4 of this Agreement, all of the Parties will bear their own respective costs and fees, including attorneys' fees, incurred in connection with the Litigation, and the negotiation, execution, and approval of the settlement.

6. **Preconditions for Payment.**  The Settlement Amounts set forth in Paragraph 3 of this Agreement shall be paid in accordance with that Paragraph only after all of the following conditions precedent have been satisfied:

   (a)     The Named Plaintiff, the Service Award Recipients, Plaintiffs' Counsel (on behalf of all other members of the Settlement Group) and the Corporate Representative(s) for Defendants execute this Agreement;

   (b)     The Service Award Recipients execute their individual settlement agreements in accordance with Paragraph 3(b) of this Agreement; and

   (c)     The Court enters an Order approving the settlement reached by the Parties without any material alteration and dismisses the Litigation and all claims asserted therein with prejudice.  To the extent the Court reduces the amount of Plaintiffs' Counsel Fees and Costs, such reduction shall not be considered a material alteration and the settlement will remain in effect with the reduced amount redistributed to the Plaintiffs in the same relative percentages as the amounts paid pursuant to Exhibit A attached hereto.

7. **Timing of Payments.**  Defendants shall pay the Plaintiffs' Counsel Fees and Costs directly to Plaintiffs' Counsel within thirty (30) days of Court approval of the settlement or within thirty (30) days of Defendants' receipt of Plaintiffs' Counsel's IRS Form W9, whichever is later.  Defendants shall issue Service Award Payments and Individual Settlement Award checks to the Plaintiffs and forward them by overnight mail to the Shavitz Law Group, P.A. within forty-five (45) days of Court approval of the settlement or within forty-five (45) days of Defendants' receipt of the applicable IRS Forms W9, whichever is later.

8. **Acknowledgement of Sufficiency of Settlement Payment.**  Plaintiffs' Counsel, on behalf of itself and all members of the Settlement Group, acknowledges the receipt and sufficiency of the amounts to be paid to them pursuant to this Agreement between and further acknowledges and agrees that the amounts set forth herein fully and finally satisfy all of the Settlement Group's claims and alleged damages and Plaintiffs' Counsel's claims for attorneys' fees and costs in the Litigation.

4

9. **Tax Treatment**.  Defendants make no representation to the Settlement Group or Plaintiffs' Counsel as to the tax liability, if any, on any settlement payment described in this Agreement.  All members of the Settlement Group agree that they shall be fully and solely responsible for any and all tax liabilities with respect to their respective settlement payments, other than the Defendants' share of payroll taxes to be paid by Defendants in accordance with Paragraph 4 above.  In the event that any federal, state, or local taxing authority seeks to collect from Defendants taxes or interest which would have been collectible from any member of the Settlement Group, Plaintiffs hereby agree to immediately reimburse Defendants for those taxes or interest.

10. **Release of Claims.**  Each member of the Settlement Group, on behalf of themselves, their assigns, representatives, agents, heirs and attorneys, fully, finally, and irrevocably releases, discharges, and covenants not to sue any of the Released Parties, jointly and severally, from and with respect to any and all claims, demands, actions, liabilities, obligations and causes of action, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, which he or she has or might claim to have against any of the Released Parties for any and all injuries, harm, damages (actual and punitive), penalties, costs, losses, obligations, debts, expenses, attorneys' fees, liabilities and other detriment, if any, that transpired from the beginning of time up to and through the date the Parties sign the final written settlement agreements between the Parties relating to any claim or damages that were (or could have been) asserted in the Litigation, as well as any and all claims for unpaid, late-paid, underpaid, or withheld payment, compensation, minimum wages, regular wages, overtime pay, commissions, and all claims under the FLSA, the Florida minimum wage and overtime laws, and similar state and local laws, if any (the "Released Claims").  Each Plaintiff further agrees and understands that he or she waives and gives up any right to become, and promises not to consent to become, a member or class representative of any class in a case in which the Released Claims are asserted against any of the Released Parties.  If, without their prior knowledge and consent, a Plaintiff is made a member or representative of a class in any such proceeding, he or she hereby agrees to opt out of the class upon notice at the first opportunity.

11. **Limited Endorsement with Settlement Checks to Opt-In Plaintiffs.**  A copy of this Settlement Agreement shall be included with the Net Individual Settlement Award checks sent to the Opt-In Plaintiffs.  Attached to the checks issued to Opt-In Plaintiffs will be the following limited endorsement:

FINAL SETTLEMENT AND RELEASE OF CLAIMS:

I understand that I have up to 90 days from the date of this Settlement Check to sign and cash this Settlement Check.

I understand that I have previously consented to join in the case entitled *Jeffrey Evans v. Comcast Corporation, et al.*, Civil Action No. 9:12-cv-81203-KAM, now pending in the United States District

Court for the Southern District of Florida. I agree that I have been provided a copy of the Settlement Agreement negotiated by Plaintiffs' Counsel in that case and hereby agree to all of the terms of that Settlement Agreement. I further agree that this payment represents payment in full for any and all claims, demands, actions, liabilities, obligations and causes of action, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, which he or she has or might claim to have against any of the Released Parties for any and all injuries, harm, damages (actual and punitive), penalties, costs, losses, obligations, debts, expenses, attorneys' fees, liabilities and other detriment, if any, that transpired from the beginning of time up to and through the date the Parties signed the final written settlement agreements between the Parties relating to any claim or damages that were (or could have been) asserted in the Litigation, as well as any and all claims for unpaid, late-paid, underpaid, or withheld payment, compensation, minimum wages, regular wages, overtime pay, commissions, and all claims under the FLSA, the Florida minimum wage and overtime laws, and similar state and local laws, if any (the "Released Claims"). This waiver and release includes any and all wage and hour claims of any kind or nature under any federal, state, or local law, including, without limitation, any and all minimum wage, overtime and recordkeeping claims, whether asserted on an individual, class or collective basis arising through the date the Parties signed the final written settlement agreements between the Parties relating to any claim or damages that were (or could have been) asserted in the Litigation.

12. **Court Approval Required.** This Agreement is subject to Court approval. The Parties will submit this Agreement for approval by the Court including a request to dismiss the lawsuit with prejudice and retain jurisdiction to enforce this Agreement. To the extent the Court permits, the Parties will redact the monetary amounts of the Financial Terms of this Agreement attached to the Motion for Approval, but submit an un-redacted copy to chambers for approval. If the Court does not approve this Agreement, the Parties agree to work in good faith to arrive at terms acceptable to the Parties and the Court consistent with the terms set forth herein. If a mutually-agreed settlement cannot be reached or is not approved, the case will proceed as if no settlement had been attempted. In such a case, the Parties will negotiate and submit for Court approval a case schedule which shall, among other things, reschedule the hearing on Plaintiff's Motion for Conditional Certification at the earliest possible moment.

13. **Information Regarding Weeks Worked by Plaintiffs.** Defendants confirm that they have provided Plaintiffs' Counsel with accurate information for Plaintiffs regarding the dates of employment and hours worked as Customer Account Executives in Florida within the limitations period prescribed by the FLSA.

14. **Confidentiality.**

    a. The members of the Settlement Group agree that they will maintain the terms of the parties' settlement and contained in this Agreement as strictly confidential to the extent permitted by the Court.  Neither Plaintiffs nor Plaintiffs' Counsel shall disclose the terms of the settlement or the facts, allegations, or other details of the Litigation to any third parties, except that the terms of this Agreement and the implementation of its terms may only be disclosed pursuant to a Court order or upon written agreement between Plaintiffs and Defendants, except that the final written settlement agreement(s) may be disclosed: (1) to the Plaintiffs' respective spouses, personal attorney(s), accountant(s), insurer(s) and/or financial advisor(s); (2) in any action to enforce its terms, subject to the right of the non-disclosing party to seek a protective order in connection therewith; (3) to the IRS and Social Security Administration, or (4) if Plaintiffs are ordered to disclose this Agreement or the final written settlement agreement(s) pursuant to a lawful subpoena or court order.  Plaintiffs agree that, if they are subpoenaed or served with any other legal action to obtain information regarding the parties' agreement, they shall provide prompt notice to Plaintiffs' Counsel, who shall promptly notify Defendants' Counsel of such legal action as soon as is practicable after receipt of such legal action.

    b. To the extent the Court permits, the Parties will redact the monetary amounts of the Financial Terms of this Agreement attached to the Motion for Approval, but submit an un-redacted copy to chambers for approval.

    c. The members of the Settlement Group and Plaintiffs' Counsel agree that they will not directly or indirectly issue any press release, hold any press conference, make any posting on any website, instant messaging site, blog, or social networking site, initiate or respond to any contact with any members of the news media, including but not limited to, any radio or television stations, newspapers, or magazines, regarding the Litigation, the terms of this Agreement, the settlement amount, or the negotiations that led to this settlement.  If any of them are asked about the case or the details of the settlement, they may state only that:  "The matter has been resolved."

15. **Supplementary Documents.**  All Parties agree to cooperate fully and execute any and all supplementary documents and to take all other actions that may be necessary or appropriate to carry out the terms of this Agreement.  The Parties acknowledge that each of them has had the benefit of counsel of its choice and has been afforded an opportunity to review the Agreement with their chosen counsel. The Parties further acknowledge that they have, through their respective counsel, participated in the preparation of this Agreement and it is understood that no provision hereof shall be construed against any of the Parties hereto.

16. **Entire Agreement.**  This Agreement contains the entire agreement between the Parties with regard to the matters set forth herein.  This Agreement may not be amended or modified in any respect other than in a writing which specifically refers to this Agreement and which is signed by all of the Parties bound by such amendment or modification.  Any and all prior or contemporaneous agreements, understandings, promises, representations, warranties, and covenants, whether written or oral, or whether expressed, implied, or apparent, are hereby deemed merged into and made a part of this Agreement.

17. **Governing Law.**  This Agreement and any settlement agreement shall be governed by the laws of the State of Florida and any dispute concerning the same shall be exclusively initiated and maintained in the federal district court located in West Palm Beach, FL.

18. **Counterparts Permitted.**  The Agreement may be executed in counterparts each of which, including any true and correct .PDF, facsimile, or other duplicate of an original, shall be deemed originals and all such counterparts shall constitute one and the same agreement.

19. **Capacity.**  Plaintiffs' Counsel, on behalf of the Settlement Group, warrants and represents that they have actual authority to enter into this Agreement and bind the Settlement Group thereto.

20. **Binding on Successors.**  This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their successors, assigns, legal representatives, heirs and legatees.

21. **Severability.**  If any provision of this Agreement is held to be illegal, invalid, or unenforceable under present or future laws, such provisions shall be duly severable; this Agreement shall be construed and enforced as if such illegal, invalid, or unenforceable provision had never comprised a part hereof; and the remaining provisions hereof shall remain in full force and effect and shall not be affected by the severance of the illegal, invalid, or unenforceable provision or provisions. However, the Parties agree that if any portion of the release of claims is determined to be illegal, invalid, or unenforceable, prior to the payment of consideration in paragraph 3 above, then this Agreement shall be rescindable at the option of the Defendants, upon written notice to Plaintiffs' counsel within five business days of the determination of illegality, invalidity or unenforceability. If the Defendants rescind the Agreement, the Agreement will be null and void and the members of the Settlement Group agree to repay to Defendants all consideration paid and the litigation shall return to the United States District Court for the Southern District of Florida.

22. **Headings.**  The headings used in this Agreement are for convenience only and are not a part of this Agreement nor affect the interpretation of any of its provisions.

23. **Construction.**  This Agreement has been jointly negotiated and drafted by the Parties through their respective counsel and no provision shall be construed or interpreted for or against any of the Parties on the basis that such provision, or any other provisions or the Agreement as a whole, was purportedly drafted by a particular Party.

Acknowledged and Agreed by all members of the Settlement Group and Plaintiffs' Counsel:

**JEFFREY EVANS**

Date: 10/20/2014

**JAMIE GRIMES**

Date: _____

**CHERRELLE BOWEN**

Date: _____

**CASHONDRA CHANDLER**

Date: _____

**ROLANDO RODRIGUEZ**

Date: _____

**SHAVITZ LAW GROUP, P.A., on behalf of all Plaintiffs (Plaintiffs' Counsel)**

By: _____
Its: _____
Date: _____

[Signatures Continued on Next Page]

23. **Construction.** This Agreement has been jointly negotiated and drafted by the Parties through their respective counsel and no provision shall be construed or interpreted for or against any of the Parties on the basis that such provision, or any other provisions or the Agreement as a whole, was purportedly drafted by a particular Party.

Acknowledged and Agreed b y all members of the Settlement Group and Plaintiffs' Counsel:

**JEFFREY EVANS**

Date: _____

**JAMIE GRIMES**

Jamie A Grimes
Date: _____October 20, 2014_____

**CHERRELLE BOWEN**

Date: _____

**CASHONDRA CHANDLER**

Date: _____

**ROLANDO RODRIGUEZ**

Date: _____

**SHAVITZ LAW GROUP, P.A., on behalf of all Plaintiffs (Plaintiffs' Counsel)**

By: _____
Its: _____
Date: _____

**[Signatures Continued on Next Page]**

9

23. **Construction.** This Agreement has been jointly negotiated and drafted by the Parties through their respective counsel and no provision shall be construed or interpreted for or against any of the Parties on the basis that such provision, or any other provisions or the Agreement as a whole, was purportedly drafted by a particular Party.

Acknowledged and Agreed by all members of the Settlement Group and Plaintiffs' Counsel:

**JEFFREY EVANS**

Date: _____

**JAMIE GRIMES**

Date: _____

**CHERRELLE BOWEN**

Date: 10.20.2014

**CASHONDRA CHANDLER**

Date: _____

**ROLANDO RODRIGUEZ**

Date: _____

**SHAVITZ LAW GROUP, P.A., on behalf of all Plaintiffs (Plaintiffs' Counsel)**

By: _____
Its: _____
Date: _____

**[Signatures Continued on Next Page]**

9

23. **Construction.** This Agreement has been jointly negotiated and drafted by the Parties through their respective counsel and no provision shall be construed or interpreted for or against any of the Parties on the basis that such provision, or any other provisions or the Agreement as a whole, was purportedly drafted by a particular Party.

Acknowledged and Agreed by all members of the Settlement Group and Plaintiffs' Counsel:

**JEFFREY EVANS**

Date: _____

**JAMIE GRIMES**

Date: _____

**CHERRELLE BOWEN**

Date: _____

**CASHONDRA CHANDLER**

*Cashondra Chandler*

Date: 10/20/14

**ROLANDO RODRIGUEZ**

Date: _____

**SHAVITZ LAW GROUP, P.A., on behalf of all Plaintiffs (Plaintiffs' Counsel)**

By: _____
Its: _____
Date: _____

**[Signatures Continued on Next Page]**

9

23. **Construction.**  This Agreement has been jointly negotiated and drafted by the Parties through their respective counsel and no provision shall be construed or interpreted for or against any of the Parties on the basis that such provision, or any other provisions or the Agreement as a whole, was purportedly drafted by a particular Party.

Acknowledged and Agreed by all members of the Settlement Group and Plaintiffs' Counsel:

**JEFFREY EVANS**

Date: _____

**JAMIE GRIMES**

Date: _____

**CHERRELLE BOWEN**

Date: _____

**CASHONDRA CHANDLER**

Date: _____

**ROLANDO RODRIGUEZ**

Date: 10/20/14

**SHAVITZ LAW GROUP, P.A., on behalf of all Plaintiffs (Plaintiffs' Counsel)**

By: _____
Its: _____
Date: _____

**[Signatures Continued on Next Page]**

9

Acknowledged and Agreed by Defendants:

**COMCAST CORPORATION**

By: _____ ARTHUR R. BLOCK
Its: _____ Senior Vice President
Date: _____ 10/20/14

**COMCAST CABLE COMMUNICATIONS MANAGEMENT LLC**

By: _____
Its: _____ VP, HR
Date: _____ 10/20/2014

10

# EXHIBIT A

## EXHIBIT A

| Plaintiff Name | Unpaid Overtime Wages Due | Service Award Payments | Total Settlement Amount |
|---|---|---|---|
| Jeffrey Evans | | | |
| Christine March | | | |
| Kristie Harden | | | |
| Cherrelle Bowen | | | |
| Roberto Medina | | | |
| Glenn Williams | | | |
| Mark Williams | | | |
| Cashondra Chandler | | | |
| Gloria McKnight | | | |
| April Williams | | | |
| Latoya Thomas-Smith | | | |
| Rolando Prieto | | | |
| Shena Deokoro | | | |
| Bethany Budgewater | | | |
| Debra Smoot | | | |
| Patricia Bowling | | | |
| Tenille Francis | | | |
| Steven Rubenstein | | | |
| Ricardo Francis | | | |
| Stephanie Maaser | | | |
| Naomi McDonnough | | | |
| Diane L. DelVecchio | | | |
| Ruben Haddock | | | |
| Roshni Ramadhar | | | |
| Mary Sears | | | |
| Debra Sawatzky | | | |
| Jesus Castro | | | |
| Frederic J. Siew | | | |
| Carlos Munoz-Deleon | | | |
| Juan Jackson | | | |
| Timothy Hawk | | | |
| Brenda Gonzalez | | | |
| Kimberly Cooper | | | |
| Melissa Grandoit | | | |
| Gimes Francois | | | |
| Sean C. Simon | | | |
| Celeste Robinson | | | |
| Natalya Parker | | | |
| David Rosado | | | |
| Kaleena Cotton | | | |
| Bonita Dames | | | |
| Monique Thompson | | | |
| Susan Sciortino | | | |
| Christopher Turner | | | |
| Cathy Walczak | | | |
| Victorie Dempaire | | | |
| Catherine Reinagle | | | |
| Dennis Iverson | | | |
| Ann Marie Millette | | | |
| Jamie Grimes | | | |
| Alberto Morales | | | |
| Maghalie LaFrance | | | |
| Adam Byrd | | | |
| Michelle Zohler | | | |
| Deynes Wright | | | |
| Erica Ross | | | |
| Jovonna Bacon | | | |
| Marleen Aspuru | | | |
| Rolando Rodriguez | | | |
| Lesley Gamboa | | | |
| Sharon Schroeder | | | |
| Andres Bernales | | | |
| Niomi Gibson | | | |
| Susan Gilmore | | | |
| TOTALS | | | |